Curtis B. DANNING, as Trustee in Bankruptcy of Matador Bowl, Inc., a California corporation, Bankrupt, Plaintiff-Appellant,

v.

BRUNSWICK CORPORATION, a Delaware corporation, and A. B. Malouf, Defendants-Appellees.

Emanuel LEVY, Plaintiff-Appellant,

v.

BRUNSWICK CORPORATION, a Delaware corporation, and A. B. Malouf, Defendants-Appellees.

Nos. 26448, 26449.

United States Court of Appeals, Ninth Circuit.

Sept. 18, 1972.

Bernard Reich (argued), Beverly Hills, Cal., for plaintiffs-appellants.

W. A. Cruikshank, Jr. (argued), Michael Antin, William O. Wagner, Beverly Hills, Cal., Reed A. Stout, Leo J. Pircher, of Lawler, Felix & Hall, Los Angeles, Cal., for defendants-appellees.

Before KOELSCH and DUNIWAY, Circuit Judges, and ANDERSON,* District Judge.

**KOELSCH, Circuit Judge:**

Plaintiffs appeal from summary judgments entered in these two consolidated antitrust actions in favor of the defendants Brunswick Corporation and A. B. Malouf.

In 1960 Malouf granted a 25 year lease of improved real property in Los Angeles, California, to Richard Dow and wife on a rental payable in monthly installments. The Dows immediately assigned the lease to Matador Bowl, Inc., a corporation which they had organized to conduct a bowling alley and restaurant on the premises. To that end Matador then purchased from Brunswick, on conditional sales contracts, the necessary bowling alleys, pinsetters, etc., and apparently purchased from third parties restaurant and bar equipment.

■ The business failed to prosper. On December 29, 1965, Matador was adjudged a bankrupt, and Curtis B. Danning, the plaintiff in No. 26,448 was appointed and qualified as trustee to administer the estate. At that time Matador was heavily in arrears in its installment payments on the lease and a substantial balance remained owing on the conditional sales contracts. The intervention of bankruptcy prevented Malouf and Brunswick from retaking their property, at least until Matador's trustee had been afforded the opportunity provided by Section 70(b) of the Bankruptcy Act to either continue the contracts in force or to relinquish them;[1] but both were naturally anxious to salvage as much as they could from the venture and to protect their respective investments. So it was that Brunswick approached Malouf with a proposition that if Danning, the trustee, did not assert the right to assume the lease and conditional sales contracts that Brunswick would lease Malouf's property. Thus, Malouf would be assured of a solvent tenant and Brunswick would not have to remove its equipment and could and would continue the operation on the premises.[2] Malouf

---

* Honorable J. Blaine Anderson, United States District Judge, Boise, Idaho, sitting by designation.

1. 11 U.S.C. § 110(b) provides, in part: "Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property: *Provided, however,* That the court may for cause shown extend or reduce such period of time. Any such contract or lease not assumed or rejected within such time . . . shall be deemed to be rejected. * * * "

   Section 70(b) is calculated to protect the interests of the bankrupt estate, by empowering the trustee to avoid such executory contracts as he deems burdensome or to assume those economically advantageous. Silverstein, Rejection of Executory Contracts in Bankruptcy and Reorganization, 31 U.Chi.L.Rev. 467, 472 (1964). An assumption, of course, carries with it both the benefits (e. g., the right to continue in possession of leased premises) and the burdens (e. g., the obligation to pay both past due and future rents) of the contract. If, on the other hand, he rejects the contract, the estate is relieved of any future burdens imposed by the contract, but it may no longer avail itself of the contract's benefits (one of which, on the facts of this case, would be the increased value of the remaining assets of the estate).

2. Due to overdevelopment in the bowling center industry, a large number of centers were financially unsuccessful. Brunswick, as one of the two major manufacturers and sellers of bowling alley equipment, frequently had to repossess the equipment and faced a depressed resale market. To offset its losses resulting from the repossessions, Brunswick would sometimes take over the operation of centers which might be successfully re-

agreed and, on January 27, 1966, approximately a month after Matador's adjudication, he executed a lease to Brunswick. This lease, however, was not to be effective unless the trustee rejected the existing lease between Malouf and Matador's assignors.

Emanuel Levy, the plaintiff in 26,449, was a shareholder in another Los Angeles bowling center. Shortly after Matador's adjudication, and within the 60 day period allowed by § 70(b), Levy sought to negotiate with Brunswick for the bowling equipment. The details of the discussions are in dispute but it is clear from the record that Brunswick rejected all of Levy's proposals; although Levy also made inquiries of the trustee about the matter, it is equally clear that he made no attempt to deal with the trustee for either the lease or the bowling equipment.

The trustee did nothing to assume the lease or the contracts and in April 1966, more than 60 days following Matador's adjudication, conducted a sale of the bankrupt's remaining assets. These, of course, did not include the lease or the bowling equipment, because the trustee, by his nonaction, was deemed to have rejected the contracts and lease and to

have relinquished whatever interest the estate had in those properties.

However, immediately before the sale was commenced, Levy and the trustee nevertheless demanded that Brunswick turn over both the leased premises and the bowling fixtures to the person making the highest bid for the property that was being sold.[3] Brunswick refused. The sale proceeded, Brunswick was the sole bidder, and the sale was thereafter confirmed by the referee.[4]

■ Plaintiffs' claims, as reflected in the complaints, are essentially similar; each is vested upon Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act. In substance the trustee and Levy contend that Malouf and Brunswick, by their lease, conspired to foreclose acquisition of the Matador business at the trustee's sale by anyone but Brunswick and enhanced Brunswick's monopoly in the bowling business.[5]

The basic defect in these contentions, briefly stated, lies in the fact that at the time of the sale the trustee had no business to sell. He had not seen fit nor taken the steps necessary to preserve the business as an integral unit, but had allowed the major components to revert to the creditor-owners.[6] Thus, neither

vitalized until such time as a suitable buyer for the center could be found; this was done to, in effect, create a market for the repossessed equipment.

3. This latter property consisted of restaurant equipment, a liquor license and an inventory of food and liquor.

4. We note that the trustee took no steps to set aside the sale in the Bankruptcy Court.

5. The relevant allegation appearing in Levy's complaint is that:

"Defendants, each well knowing and acquiescing in the actions of the others, did in 1965 and 1966 contract, combine and conspire to and did unreasonably restrain and monopolize trade in violation of Sections 1 and 2 of the Sherman Act . . . by effectively eliminating plaintiff, a responsible bidder, from bidding competitively in the bankruptcy sale for all the assets of the Bankrupt, which assets were acquired by Brunswick in violation of Section 7 of the Clayton Act instead

of to plaintiff; the effect of such acquisition substantially lessened competition and tended to and did enhance Brunswick's monopoly in the relevant market. . . ."

Danning's allegations are substantially similar, except as to the effect of the asserted antitrust violations; in that respect Danning alleged that Brunswick, by excluding competitive bidding at the trustee's sale, diminished the value of the bankrupt estate.

6. In an affidavit filed in the District Court, Danning explained his failure to assume the executory contracts as follows:

"It would have been foolhardy for me as the trustee to have affirmed leases and conditional sales agreements without an operator, and it was defendants' conduct which in effect prevented me from obtaining an operator such as plaintiff Levy who was eminently qualified in every respect."

This is "circular reasoning with a vengeance," Stevenson v. Diebold, Inc., 422

Malouf nor Brunswick were obliged to accede to the trustee's demands.

█ Nor do the antitrust laws make unlawful either Malouf's choice of tenant for his property, or Brunswick's refusal to allow Levy to take over the purchase contracts on which Matador had defaulted. After the trustee had rejected the lease and conditional sales contracts, Malouf and Brunswick were free to deal with each other or with anyone else, or not to deal at all, so long as their refusal to deal with Levy did not restrain trade. *Compare* Bushie v. Stenocord Corp., 460 F.2d 116 (9th Cir. 1972), Ricchetti v. Meister Brau, Inc., 431 F.2d 1211 (9th Cir. 1970), cert. denied, 401 U.S. 939, 91 S.Ct. 934, 28 L.Ed.2d 219, and Jos. E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969), cert. denied, 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755, reh. denied, 397 U.S. 1003, 90 S.Ct. 1113, 25 L.Ed.2d 415, with Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), and Lessig v. Tidewater Oil Co., 327 F.2d 459 (9th Cir. 1964), cert. denied, 377 U.S. 993, 84 S.Ct. 1920, 12 L. Ed.2d 1046. None of the facts appearing in this record permit an inference that Malouf and Brunswick conspired to restrain trade, or that Brunswick's operation of a bowling center at the Matador site would affect competition in the relevant market in the Los Angeles area.[7]

"While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to ex-

tend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint." First National Bank v. Cities Service Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). We conclude that the summary judgments were properly granted.

The judgments are affirmed.

---

F.2d 1228, 1233 (9th Cir. 1970), cert. denied, 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64, revealing a basic misconception about the powers of a bankruptcy trustee. The lease between defendants was conditional both in terms and in law; executed, as noted earlier, within the 60 day period of the trustee's option, it would have been rendered useless to the defendants and unenforceable had the trustee elected to assume the bankrupt's lease with Malouf, which was a prior lease. Thus, if the trustee had found his prospective operator (Levy), he could have exercised his option to assume the

lease, and put Levy in possession of the premises. Neither defendant could have prevented him, by a lease or otherwise, from doing so.

7. Brunswick, during the period of the events under consideration, operated 22 bowling centers, approximately two percent of the total number of centers, in the State of California. Nearly all of them were acquired after the previous owners had defaulted on their contracts to purchase bowling fixtures and equipment, and after Brunswick had repossessed the equipment.