**In the Matter of EXECUTIVE TECH-NOLOGY DATA SYSTEMS, a Michigan corporation, Debtor.**

**Bankruptcy No. 86–05678–B.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Oct. 27, 1987.

**2.** The Court's holding renders debtor's motion for oral argument moot and it will be denied.

Schlussel, Lifton, Simon, Rands, Galvin & Jackier, P.C. by Geoffrey L. Silverman, Thomas R. Morris, Southfield, Mich., for debtor.

Honigman Miller Schwartz and Cohn by Todd M. Halbert, Detroit, Mich., for movant.

## MEMORANDUM OPINION

GEORGE BRODY, Chief Judge.

This is a motion to vacate the automatic stay, or, alternatively, to compel the debtor in possession[1] (hereinafter referred to as the "debtor") to assume or reject an allegedly executory contract.

On March 4, 1981, Accountech Systems, Inc., now known as Executive Technology Data Systems (debtor) entered into a purchase agreement with John F. Howard (Howard), David H. Dial, Sr. (Dial), and a Texas partnership made up of Howard and Dial, then known as Executive Technology Data Systems. The agreement gave the debtor an option to purchase certain assets and the business operation of Executive Technology Data Systems. The assets covered by the option are set forth as follows in Appendix A to the option to purchase:

Copyrights (registered or otherwise);

Exclusive Marketing Rights;

Trademarks (registered or otherwise);

Contract rights (other than licenses fees receivable);

License rights;

Program and User Documentation and manuals; for these products.

ASSETS

Small Business Accounting and Financial Reporting System for the IBM System/32 and IBM System/34

Time and Expense Management System for the IBM System/32 and IBM System/34 Miscellaneous programs

Amortization and Depreciation Schedules for the IBM System/32 and IBM System/34 Miscellaneous programs

---

1. A debtor in possession generally has the rights and powers of a trustee. 11 U.S.C. § 1107(a) (Supp.III 1985).

Also:

Telephone Number

Company Name and logo of "Executive Technology Data Systems" and "ETDS"

Custody of historical business files relative to:

    Customer Receivables

    Customer Correspondence

    Sales leads

    Correspondence with prospects

    Inventory of forms, brochures, and manuals

Any and all other rights related to the business operation exclusive of Accounts Receivable and office supplies

Option to acquire Accounts Receivable and office supplies

The agreement provided that, upon the exercise of the option, the debtor was to enter into a consultation agreement and agreement not to compete with Howard and Dial.[2] The consultation agreement and agreement not to compete provides in part that:

If and when the option is exercised by ATS to acquire the assets and business operation of ETDS, ATS will pay monthly the sum of Four Thousand ($4,000.00) Dollars each to John F. Howard and David H. Dial, Sr., ... commencing on the first day of the first month following the exercise of the option and continuing for a period of sixty (60) consecutive months thereafter. The total annual consulting fees for each John F. Howard and David H. Dial, Sr., shall be Forty-eight Thousand (48,000.00) Dollars for each year of the five year period after the exercise of the option.

The Four Thousand ($4,000.00) Dollar monthly payments to John F. Howard and David H. Dial, Sr., shall be for their consulting services as well as payment for the services that will have been rendered during the transition period. * * *

The parties agree that the consulting fees of $480,000 represent part payment on the purchase price of the assets. The consultation agreement contains two additional sig-

nificant paragraphs. The paragraphs read as follows:

*Failure To Pay Consulting Fee*

Failure to pay consulting fees for any three (3) months shall give John F. Howard and/or David H. Dial, Sr. the right to accelerate all remaining consulting fees which shall become due and payable for Consultation.

*Default By ATS*

In the event of default in consulting payments to John F. Howard or David H. Dial, Sr., John F. Howard and David H. Dial, Sr. shall have the right to immediately reacquire all assets theretofore sold ... per the Option Agreement.

The purchase agreement also provided that the debtor was to grant a security interest to Howard and Dial in the assets acquired to secure the payment of the balance of the consulting fees. The debtor exercised the option, the property enumerated was conveyed to the debtor, and the consultation agreement and agreement not to compete was executed. However, the debtor did not grant Howard and Dial a security interest in the conveyed assets.

The debtor made the required consulting agreement payments until August 1, 1986. As of that date, all but $96,000 ($48,000 to each Howard and Dial) of the total consulting fees of $480,000 had been paid. On November 1, 1986, Dial, on behalf of himself and Howard, wrote to and advised the debtor that since the debtor had failed to pay the consulting fees for a period of three months, they were exercising their right to accelerate payment of the unpaid consulting fees, and therefore all unpaid consulting fees were now due and payable, and further advised the debtor that title to all the assets which were previously conveyed to it reverted immediately to them. Four days later, the debtor filed a Chapter 11 case, and it has since then remained in possession and continued to operate the business. Thereafter, Howard and Dial filed a motion to lift the automatic stay of 11 U.S.C. § 362 (1982 and Supp. III 1985) to

---

2. The consulting agreement and the agreement not to compete were embodied in the same document.

permit them to recover the property which had been previously conveyed to the debtor, or, alternatively, to compel the debtor, pursuant to 11 U.S.C. § 365(d)(2) (Supp. III 1985),[3] to assume or reject the agreement between the parties as an executory contract.

The court will first address the motion to vacate the stay. Upon the filing of a petition in bankruptcy, 11 U.S.C. § 362(a) stays all "litigation, lien enforcement and other actions, judicial or otherwise, which would affect or interfere with property of the estate, property of the debtor, or property in the custody of the debtor." 2 *Collier on Bankruptcy,* ¶ 362.01, p. 362-7 (King, 15th ed. 1987). Relief from the automatic stay is governed by 11 U.S.C. § 362(d) (1982 and Supp. III 1985), which provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Howard and Dial maintain that the debtor's prepetition default in payment of the consultation fees and their sending of the November 1, 1986 letter resulted in a revesting of the ownership of the assets in them, and therefore the stay should be lifted to permit them to take possession of the assets, to quiet title thereto, and to enjoin the debtor's infringement of their ownership interests. The debtor opposes the relief requested, contending that Howard and Dial did not reacquire the assets prior to the filing of the bankruptcy petition. Additionally, they contend that even

if Howard and Dial had reacquired the assets, the reacquisition would be subject to attack as a preference pursuant to 11 U.S.C. § 547 (1982 and Supp. III 1985, *as amended by* Pub. L. 99–554 § 283(m), Oct. 27, 1986).

■ The difficulty with Howard and Dial's position is that they read too much into the November 1 letter. The November 1 letter did not revest title to the assets in Howard and Dial. The purchase agreement, in addition to providing that Howard and Dial would have a right to reacquire the assets upon default, provided that "[s]aid reacquisition shall be provided by [Debtor] to John F. Howard and David H. Dial, Sr., on a smooth transitional basis...." The agreement contemplated that upon default Howard and Dial would have the right to reacquire the assets either by voluntary surrender by the debtor or by repossession, presumably pursuant to the security interest that the debtor was obligated to grant to Howard and Dial. The debtor did not return or reassign the assets, nor did Howard and Dial take any steps after writing the letter to retake the property. Howard and Dial did not reacquire the assets previously conveyed to the debtor prior to the filing of the bankruptcy petition. Thus, there is no basis for granting the relief requested based upon Howard and Dial's "reacquisition" or "reversion" argument. Since Howard and Dial did not reacquire the assets, it is unnecessary to address the debtor's contention that, even if they had reacquired the assets, the reacquisition would be subject to attack as a preference.

■ Additionally, Howard and Dial contend that they hold an equitable lien in the assets which was created by the contract, and therefore the stay should be vacated to permit them to enforce this lien. This argument is not persuasive. "The Bankruptcy Code makes clear that Article 9 of the Uniform Commercial Code ('UCC') governs consensual liens in personal property and fixtures." *Leasing Service Corporation*

---

**3.** This case was filed prior to the effective date of amendment by Pub.L. 99–554 § 257(j), Oct. 27, 1986. *See* Section 302(c)(1) of Pub.L. 99– 554, set out as note under Section 581 of Title 28.

v. *First Tennessee Bank National Association,* 826 F.2d 434, 437 (6th Cir.1987). The contract of purchase obligated the debtor to grant Howard and Dial a security interest in the property it acquired by the exercise of the option. Howard and Dial, however, neglected to obtain and perfect the bargained-for security interest. Howard and Dial do not contend that any security interest they may have obtained could not have been perfected. Paragraph 6 of Section 60(a) of the preference provision of the Bankruptcy Act of 1938, as amended in 1950 (former 11 U.S.C. § 96(a)(6) (repealed 1979)), explicitly provided that equitable liens were invalid as to a trustee in bankruptcy where available means of perfecting legal liens were not employed.[4] The National Bankruptcy Conference in 1966 established a Committee on Coordination of the Bankruptcy Act and the Uniform Commercial Code. The Committee, chaired by Professor Grant Gilmore, was charged with reexamining the problem of the validity in bankruptcy proceedings of security interests in both real and personal property. *Report of the Committee on Coordination of the Bankruptcy Act and the Uniform Commercial Code* (1970) set out as Appendix to H.R. Rep. No. 595, 95th Cong., 1st Sess. 204 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News pp. 5787, 5963, 6164. One of the many observations in the Report is that "§ 60 was, necessarily, written in pre-[Uniform Commercial] Code terminology, which leads to difficult, indeed logically insoluble, problems of statutory construction in applying the § 60 rules to Article 9 security interests." *Id.* at 209, *reprinted at* 6170. The report gives examples, including the following:

[T]he ambiguous provisions of § 60a(6) on so-called equitable liens, which were necessary when § 60 was redrafted in the late 1940's, no longer serve any function, for the reason that Article 9 has turned the "equitable liens" against which § 60a(6) was directed into "unperfected security interests" which the trustee can in any case set aside.

*Id.* See also *In re O.P.M. Leasing Service, Inc.,* 23 B.R. 104, 119–120 (Bankr.S.D.N.Y. 1982). The equitable lien language in Section 60(a)(6) of the Bankruptcy Act is not found in the Bankruptcy Code. This omission did not change existing law. The equitable lien asserted by Howard and Dial would not have been enforceable against the debtor under the Bankruptcy Act, and it is not enforceable against the debtor under the Bankruptcy Code. Since Howard and Dial do not have an enforceable property interest, there is no basis for granting the motion. Moreover, even if the equitable lien were enforceable against the debtor, no grounds have been shown for relief from the automatic stay. Howard and Dial have not attempted to establish either that "cause," such as a lack of adequate protection, exists under Section 362(d)(1), or that the debtor lacks equity in the property and the property is not necessary for reorganization under Section 362(d)(2).

Since Howard and Dial have not established grounds for vacating the stay, it is necessary to address their motion to compel the debtor to assume or reject the executory contract and their contention that, if the debtor rejects the executory provisions of the contract, the debtor is required to return the assets acquired by exercising the option to purchase.[5]

**4.** The pertinent language in Section 60(a)(6) (former 11 U.S.C. § 96(a)(6)(1970)) reads as follows:

The recognition of equitable liens where available means of perfecting legal liens have not been employed is declared to be contrary to the policy of this section.

**5.** The term "executory contract" is not defined in the Code. The Commission on Bankruptcy Laws of the United States did not attempt to define the term "executory contract." "The term," it remarked, "is well understood, and any

succinct statutory language risks an unintended omission or inclusion." *Report of the Commission on the Bankruptcy Laws of the United States,* H.R. Doc. No. 93–137, pt. I, 93d Cong., 1st Sess. 198–99 (1973). The drafters of the Code agreed "that there is no precise definition of what contracts are executory" but observed that the term "generally includes contracts on which performance is due to some extent on both sides." H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News, pp. 5787, 6303. Various

Section 365(a) provides that "the trustee, subject to the court's approval, may assume or reject any executory contract ... of the debtor." (Supp.III 1985). Section 365 further provides that rejection constitutes a breach of an executory contract, generally as of the date immediately preceding the filing of the petition in bankruptcy. Section 365(g)(1) (1982).[6] A debtor in a Chapter 11 proceeding may assume or reject an executory contract "at any time before the confirmation of the plan." Section 365(d)(2). However, the court "on request of any party to such contract" may order the debtor to make this determination at an earlier time. *Id.* In response to Howard and Dial's motion, the debtor provided in the Chapter 11 plan it filed for the rejection of the consultation agreement and the agreement not to compete. Howard and Dial maintain that the four documents executed—the option to purchase, the consultation agreement and agreement not to compete, the assignment of copyrights, and the assignment of trademark and logo— make up one single unified contract, and that a debtor is not free to retain the

favorable features of a contract and reject only the unfavorable ones, *In re Tonry*, 724 F.2d 467 (5th Cir.1984); *In re Lovitt*, 757 F.2d 1035 (9th Cir.), *cert. denied sub nom. Cheadle v. Appleatchee Riders Assoc.*, 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985); *In re Texstone Venture, Ltd.*, 54 B.R. 54 (Bankr.S.D.Tex.1985); *In re Holland Enterprises, Inc.*, 25 B.R. 301 (Bankr.E.D.N.C.1982); *Danning v. Brunswick Corp.*, 466 F.2d 1010 (9th Cir.1972), *cert. denied* 409 U.S. 1126, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973); and *In re Carrere*, 64 B.R. 156 (Bankr.C.D.Cal.1986). Thus, they conclude, if the debtor rejects the consultation agreement, the option to purchase is also rejected, and therefore the debtor must return the property it acquired by exercising the option. For the purposes of deciding this motion, the court will assume that the four documents executed make up a single unified contract. However, the court disagrees with Howard and Dial's conclusion that, if the debtor rejects the consultation agreement, it must return the assets acquired by exercising the option to purchase.

definitions, however, have been offered. Professor Countryman, prior to the enactment of the Bankruptcy Code, defined an executory contract as one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Countryman, *Executory Contracts in Bankruptcy, Part I*, 57 Minn. L. Rev. 439, 460 (1973). This definition has been adopted by many courts, *e.g. In re Pacific Express, Inc.*, 780 F.2d 1482 (9th Cir.1986); *Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043 (4th Cir.1985), *cert. denied sub nom. Lubrizol Enterprises v. Canfield*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986); *Bankers' Trust Co. v. Gibbons (Matter of Chicago Rock Island & Pacific R. Co.)*, 604 F.2d 1002 (7th Cir.1979), but it has also been the subject of criticism, *e.g. In re Norquist*, 43 B.R. 224 (Bankr.E.D.Wash.1984) and cases cited therein. Professor Shanker opines that the focus should be "on whether future duties, other than the payment of money, were to be performed on the part of the bankrupt. If these duties were required only on the part of the nonbankrupt, then the contract was not executory for bankruptcy purposes." Shanker, "The Effect of the 1984 Bankruptcy Code Amendments on Contracts," 31 *The Practical Lawyer*, p. 23 (1985). Some courts have held that "every contract which requires sub-

stantial performance by either party to the agreement other than the payment of money is potentially executory in the bankruptcy context." *In re Norquist*, 43 B.R. 224, 228. The Sixth Circuit, rather than attempting to define the term, suggests that the proper approach "is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory." *In re Jolly*, 574 F.2d 349, 351 (6th Cir.), *cert. denied sub nom. Still v. Chattanooga Memorial Park*, 439 U.S. 929, 99 S.Ct. 929, 58 L.Ed.2d 322 (1978). It has also been suggested that, in the "final analysis, executory contracts are measured not by a mutuality of commitments but by the nature of the parties and the goals of reorganization." *In re Booth*, 19 B.R. 53, 56 (Bankr.D.Utah 1982). The struggle that courts have had in attempting to define the term "executory contract" attests to the prescience of the commission. Fortunately, the court has been spared the burden of selecting a definition—the parties agree that the contract is executory.

6. This case was filed prior to the effective date of amendment by Pub.L. 99–554 § 257(m), Oct. 27, 1986. *See* Section 302(c)(1) of Pub.L. 99–554, set out as note under Section 581 of Title 28.

█ Unquestionably, an executory contract may not be assumed in part and rejected in part, and if a debtor elects to reject an executory contract, he rejects the benefits as well as the burdens. 8 *Collier on Bankruptcy,* ¶ 3.15[7], p. 205–6 (Moore, 14th ed. 1978); 2 *Collier on Bankruptcy,* ¶ 365.03, p. 365–15 (15th ed. 1987). However, this does not mean that rejection of an executory contract requires the reversal or undoing of already executed provisions. "[R]ejection of an executory contract ... is not the equivalent of rescission...." *Murphy v. C & W Limited Corp. (In re Murphy),* 694 F.2d 172 (8th Cir.1982). The aim of Section 365 " 'was to solve the problem of *assumption of liabilities, i.e.,* excusing or requiring *future* specific performance by the bankrupt....' 2 *Collier on Bankruptcy,* ¶ 365.01[2] (15th ed. 1987) (emphasis [added])." *Leasing Service Corporation v. First Tennessee Bank National Association,* 826 F.2d at 436–7. Section 365 permits a debtor to refuse to perform an executory obligation if he determines that it would be burdensome to do so, and thus "denies the right of a contracting creditor to require the bankrupt estate to specifically perform the then executory portions of the contract." *Id.* at 436. Since it would offend "basic principles of equity and mutuality of obligation" to excuse performance by the debtor while compelling performance by the contracting creditor, Section 365 also prohibits a rejecting debtor from compelling the contracting creditor to perform its executory obligations. 2 *Collier on Bankruptcy,* ¶ 365.01[2], p. 365–12 (15th ed. 1987). Additionally, to compensate the creditor for any loss occasioned by the debtor's rejection, Section 365(g)(1) permits the creditor to file a claim for any damage suffered by virtue of the rejection. However, since the purpose of Section 365 is to aid a financially troubled debtor, the claim is converted to a prepetition claim. 11 U.S.C. § 365(g)(1). Section 365 addresses only future performance obligations of the parties. It does not have any impact upon the executed portions of a contract. *See Leasing Service Corp. v. First Tennessee National Assoc.,* 826 F.2d at 437. When the debtor exercised the option to purchase, the assets became property of the debtor. Property acquired prior to the filing of a petition in bankruptcy remains property of the estate regardless of whether the trustee or debtor in possession assumes or rejects the unperformed obligations of the contract pursuant to which the property was acquired. *See* Julis, *Classifying Rights and Interests Under the Bankruptcy Code,* 55 Amer. Bankr. L.J. 223 (1981). A creditor, if he has a right to recover property from a bankruptcy estate, possesses the right by virtue of a state law remedy that survives in bankruptcy. Section 365 confers no such right. The rejection of the consultation agreement does not obligate the debtor to return the property it acquired by virtue of the exercise of the option to purchase.

█ Actually, it is questionable whether there was any need for the debtor to reject the consultation agreement. The debtor's purpose in rejecting the consultation agreement was to convert an administrative claim into a prepetition obligation. The November 1 letter advised the debtor that, due to its default in making the consulting fee payments, all of the unpaid installment payments were immediately due and payable. The November 1 letter did not divest the debtor of its rights in the assets. It did, however, accelerate the payments due for consulting fees. Since the consulting fee claim was accelerated prior to the filing of the bankruptcy petition, it is a prepetition claim in the bankruptcy case. Thus, acceleration of the consulting fee obligation accomplished what the debtor sought to accomplish by rejecting the consulting fee agreement. Therefore, there was no need for the debtor to reject the consultation agreement to convert the consulting fee debt to a prepetition obligation.

An appropriate order is to be submitted for entry.