In the Matter of Terry Lee **FALBE, Debtor.**

**George P. DAKMAK, Trustee of the Estate of Terry Lee Falbe, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**Bankruptcy No. 86–01446–B. Adv. No. 87–0704–B.**

United States Bankruptcy Court, E.D. Michigan, S.D.

March 1, 1988.

Fitzgerald, Peters & Dakmak by John S. Regan, for plaintiff-trustee.

Roy C. Hayes, U.S. Atty. by Karl R. Overman, Asst. U.S. Atty. and Thomas J. Clark, U.S. Dept. of Justice, Tax Div. for defendants.

## MEMORANDUM OPINION

GEORGE BRODY, Chief Judge.

The question presented is whether an agreement to reassign a liquor license is a security interest, and, if it is, whether it has priority over a federal tax lien obtained pursuant to 26 U.S.C. § 6321.

The following facts were stipulated:

1. On October 26, 1983, Terry Lee Falbe sold tangible and intangible personal property to S.L.B. Enterprises, Inc. Included in the property sold by Terry Lee Falbe to S.L.B. Enterprises was a Michigan Class C liquor license.

2. On October 26, 1983, S.L.B. Enterprises and Terry Lee Falbe executed a security agreement.

3. The collateral covered by the security agreement included all of equipment and furniture of S.L.B. Enterprises, d/b/a The Utica Show Bar. Terry Lee Falbe did not file a financing statement or statements with the County or with the Secretary of State relating to his security interest.

4. On October 26, 1983, S.L.B. Enterprises and Terry Lee Falbe entered into a certain reassignment agreement of a liquor license (the "Reassignment Agreement").

5. Before the reassignment of the liquor license, the United States of America filed tax liens against S.L.B. Enterprises for unpaid federal tax liabilities.

6. On April 4, 1986, Terry Lee Falbe filed a voluntary Chapter 7 petition, and a trustee was appointed to administer the estate. Upon the filing of the bankruptcy petition, the trustee succeeded to whatever rights the debtor had by virtue of the agreement to reassign the liquor license.

The trustee instituted an action to subordinate the federal tax lien to the trustee's interest in the liquor license evidenced by the reassignment agreement that S.L.B. Enterprises executed.

The resolution of this controversy is governed by 26 U.S.C. § 6321 and § 6323 of the Internal Revenue Code. Prior to 1966, these sections read as follows:

26 U.S.C. § 6321. Lien for taxes.

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6323. Validity against mortgagees, pledgees, purchasers, and judgment lien creditors.

> (a) Invalidity of lien without notice. Except as otherwise provided in subsections (c) and (d), the lien imposed by Section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until no-

tice thereof has been filed by the Secretary or his delegate.

The Supreme Court, prior to 1966, held that the rule of "first in time is first in right" is not to be mechanically applied in determining the priority status between a Section 6321 tax lien and a competing lien. *United States v. City of New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). A lien which antedates a federal tax lien is to be accorded priority only if the competing lien was "choate."[1] *See United States v. Security Trust & Sav. Bank of San Diego,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950); *United States v. City of New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *United States v. Pioneer Am. Ins. Company,* 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); and *United States v. Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). A competing lien was choate only if "the identity of the lienor, the property subject to the lien and the amount of the lien is established." *United States v. City of New Britain,* 347 U.S. at 84, 74 S.Ct. at 369–70. In applying this rule, competing liens were found "inchoate" by the Court because the lienor did not have possession or title to the property involved (*United States v. Gilbert Assoc., Inc.,* 345 U.S. 361, 366, 73 S.Ct. 701, 704, 97 L.Ed. 1071 (1953); *Illinois ex rel. Gordon v. Campbell,* 329 U.S. 362, 370, 67 S.Ct. 340, 345, 91 L.Ed. 348 (1946); *United States v. Waddill, Holland and Flinn, Inc.,* 323 U.S. 353, 358, 65 S.Ct. 304, 307, 89 L.Ed. 294 (1945)), because the amount secured by the lien was not established (*United States v. Waddill, Holland and Flinn, Inc.,* 323 U.S. at 357–58, 65 S.Ct. at 306–07; *New York v. Maclay,* 288 U.S. 290, 293–94, 53 S.Ct. 323, 324, 77 L.Ed. 754 (1933)) or because the property constituting the collateral or the identity of the lienor was not certain (*Illinois ex rel. Gordon v. Camp-*

*bell,* 329 U.S. at 373–74, 67 S.Ct. at 346–47; *United States v. Texas,* 314 U.S. 480, 487, 62 S.Ct. 350, 353–54, 86 L.Ed. 356 (1941); *United States v. Knott,* 298 U.S. 544, 56 S.Ct. 902, 80 L.Ed. 1321 (1936)). In light of the Court's rulings and dicta, at least one commentator concluded that "only an incorrigible optimist can believe that there exists a lien sufficiently specific and perfected to defeat the federal priority." Kennedy, *From Spokane County to Vermont: The Campaign of the Federal Government Against the Inchoate Lien,* 50 Iowa L.Rev. 724, 727 (1965).

In 1966, Congress amended Section 6323. The term "holder of a security interest" was added to Section 6323(a), and a new paragraph (h) was added.[2] The provisions pertinent to this controversy now read as follows:

§ 6321. Lien for taxes

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

§ 6323. Validity and priority against certain persons

(a) Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.—The lien imposed by section 6321 shall not be valid as against any purchaser, *holder of a security interest,* mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary. (Emphasis added).

---

1. Congress has never used the term "choate" or the more conventional couplet, "specific and perfected," or yet the antonymous expression, "inchoate and general," in any relevant legislation. The Supreme Court has nevertheless been engaged for thirty-five years in marking out meanings for these words in applying the federal priority and tax lien statutes. The term "choate" is itself of questionable origin, and the other terms mentioned have been given an eso-

teric significance having no relation to conventional usage. Kennedy, *From Spokane County to Vermont: The Campaign of the Federal Government Against the Inchoate Lien,* 50 Iowa L.Rev. 724 (1965).

2. Additional amendments were made, but they are not pertinent to this controversy.

(h). Definitions.

(1) Security Interest.

The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. *A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien* arising out of an unsecured obligation.... (Emphasis added).

Section 6323, as amended, substituted a simple test for the esoteric "choateness" doctrine to determine whether a security interest which antedates a federal tax lien is or is not subordinate to the tax lien. Under Section 6323(a), as amended, a security interest which antedates a perfected 6321 tax lien is now protected from invasion by the tax lien if the security interest "has become protected under local law against a subsequent judgment lien...." 26 U.S.C. § 6323(h)(1). *See* W. Plumb, *Federal Tax Liens,* 113–15 (3d ed. 1972).

The question to be decided, therefore, is whether an agreement to reassign a liquor license is a security interest which is protected under Michigan law against a subsequent judgment lien.

■ Article 9 of the Uniform Commercial Code, which has been adopted in Michigan [3], sets out a comprehensive scheme for the regulation of security interests in personal property. Article 9 applies to any transaction (regardless of its form), except as to transactions specifically excluded by Article 9, "which is intended to create a security interest in personal property or fixtures, including goods, documents, instruments, general intangibles, chattel paper, or accounts." Mich.Comp.Laws § 440.9102 (1978) (Mich.Stat.Ann. § 19.9102 (Callaghan 1978)). The creation of a security interest requires an agreement that it attach the giving of "value" by the secured party and the acquisition by the debtor of "rights" in the collateral. Mich.Comp. Laws § 440.9203 (1978) (Mich.Stat.Ann.

§ 19.9203 (Callaghan 1978)). However, in order for the security interest to be good as against third parties—other secured parties, judgment lien creditors, a trustee in bankruptcy—the security interest must be perfected. Mich.Comp.Laws § 440.9302 (1978) (Mich.Stat.Ann. § 19.9302 (Callaghan 1978)). An unperfected security interest is not valid as against a judgment lien creditor. Mich.Comp.Laws § 440.9301 (1984) (Mich.Stat.Ann. § 19.9301 (Callaghan 1984)). A liquor license is property. *Bundo v. City of Walled Lake,* 395 Mich. 679, 238 N.W.2d 154 (1976); *In re Coed Shop,* 435 F.Supp. 472 (N.D.Fla.1977); *In re Midland Service, Inc.,* 10 U.C.C.Rep.Serv. 499 (Callaghan 1971)). *See also Board of Trade of Chicago v. Johnson,* 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533 (1924); *Fisher v. Cushman,* 103 F. 860 (1st Cir.1900). It is a general intangible. *Paramount Fin. Co. v. United States,* 379 F.2d 543 (6th Cir. 1967); *Bogus v. American Nat'l Bank of Cheyenne, Wyoming,* 401 F.2d 458 (10th Cir.1968); *In re Coed Shop, supra.* The creation and perfection of security interests in a liquor license is therefore governed by Article 9. The government apparently concedes that the trustee, as successor in interest to Falbe, holds a security interest in the liquor license. However, to perfect the security interest as against a subsequent judgment lien creditor, a financing statement must be filed in the office of the Secretary of State. Mich. Comp.Laws § 440.9302 (1978) (Mich.Stat. Ann. § 19.9302 (Callaghan 1978)). A financing statement was not filed, and therefore the security interest was not perfected. Since the security interest was not perfected, it is subordinate to the rights of a judgment lien creditor, [Mich.Comp.Laws § 440.9301 (1984) (Mich.Stat.Ann. § 19.9301 (Callaghan 1984))], and thus is not a security interest protected by 26 U.S.C. § 6323.

■ The trustee, however, contends that Article 9 does not supply the rule of law to determine the security status of the reassignment agreement. The trustee points out that the Michigan Liquor Control Com-

**3.** Michigan adopted the Uniform Commercial Code in 1962.

mission by rule prohibits the taking of a security interest in a liquor license.[4] To hold that an agreement to reassign is nothing more than an unperfected security interest, *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104 (Bankr.S.D.N.Y.1982); *In re Executive Technology Data Services, Inc.,* 79 B.R. 276 (Bankr.E.D.Mich.1987), would, the trustee maintains, punish unjustly the holder of an "agreement to reassign" for not doing something which he was prohibited from doing. Accordingly, the trustee maintains the court should follow *In re Gullifor,* 47 B.R. 450 (Bankr.E.D.Mich. 1985), and hold that an agreement to reassign a liquor license creates an equitable lien, and that such a lien is valid as against a judgment lien creditor, and therefore is superior to the federal tax lien. This same argument was made in *Hidden Hollow Golf Course, Inc. v. Tittabawassee Inv. Co. (In re Tittabawassee),* 831 F.2d 104 (6th Cir.1987). In rejecting this argument, the court in *Tittabawassee,* stated: " 'Rule 19 cannot, and will not, affect the priorities in a security interest in a liquor license. Rather, the bankruptcy court will adhere to the priority rules as set forth in the U.C.C.' ", *Tittabawassee,* 831 F.2d at 106 (1986) (quoting *Andriacchi's, Inc. v. Pike (In re Pike),* 62 B.R. 765, 769 (Bankr.W.D. Mich.1986)). The trustee's argument that Article 9 is not applicable to the liquor license transaction is rejected.

Nor do cases such as *Columbia Bank v. Jacobs,* 10 Mich. 349 (1862), and *Eagle Oil Corp. v. Cohassett Oil Corp.,* 263 Mich. 371, 248 N.W. 840 (1933), cited by the trustee, support his contention that an unperfected security interest in personal property has priority over a subsequent judgment lien. Neither of the cases deal with the question now before the court. Both cases involved priority questions with respect to real estate. Unlike Article 9 of the Uniform Commercial Code which subordinates an unrecorded security interest in personal property to the lien of a judgment creditor, an unrecorded real estate mortgage in Michigan is void only as against "subsequent purchasers in good faith and for a valuable consideration." Mich.Comp.Laws § 565.29 (1915) (Mich.Stat.Ann. § 26.547 (Callaghan 1915)).

An appropriate order is to be submitted for entry.

---

4. Mich.Admin.Code r. 436.1119 (1978) Retail license; agreements or contracts.
 Rule 19.

(3) A security agreement between a buyer and a seller of a licensed retail business, or between a debtor and a secured party, shall not include the license or alcoholic liquor.